SMITH, Appellant,

v.

CLEVELAND CLINIC FOUNDATION et al., Appellees.

[Cite as *Smith v. Cleveland Clinic Found.*, 151 Ohio App.3d 373, 2003-Ohio-286.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 80940.

Decided Jan. 23, 2003.

The Simon Law Firm, Ellen S. Simon, Anne–Marie Ahern and Steven D. Bell; Gittes & Schulte and Frederick M. Gittes; Louis A. Jacobs; Ann Lugbill; and Merl H. Wayman, for appellant.

Duvin, Cahn & Hutton, Suellen Oswald, Robert P. Duvin, Kathleen M. Kordeleski and Robert M. Wolff, for appellees.

PATRICIA ANN BLACKMON, Presiding Judge.

{¶ 1} Tamara Smith appeals the trial court's summary judgment in favor of appellee Cleveland Clinic Foundation ("Clinic"). The trial court's judgment

disqualified Ellen Simon, Smith's attorney. Smith assigns the following as error for our review:

{¶ 2} "The trial court erred and abused its discretion when it found that counsel violated Disciplinary Rule 7–104 and when it disqualified Plaintiff's counsel on that basis."

{¶ 3} Having reviewed the record and pertinent law, we reverse the trial court's decision and remand for proceedings consistent with this opinion. The apposite facts follow.

{¶ 4} Smith was a contracted employee of the Clinic from July 1, 1998, through June 30, 2000. The Clinic opted not to renew Smith's employment contract following a department committee meeting chaired by Dr. Robert Petras and attended by Dr. John Goldblum, Dr. Bruce Sebek, and others.

{¶ 5} Following termination of her employment, Smith retained Simon. Prior to filing a lawsuit, Simon interviewed several Clinic employees, including Drs. Goldblum and Sebek, without informing the Clinic. Subsequently, Smith sued the Clinic and Dr. Petras in the court of common pleas alleging wrongful termination, inter alia.

{¶ 6} Upon learning of these interviews, the Clinic moved to disqualify Simon for improperly contacting its employees in violation of the Code of Professional Responsibility's DR 7–104.[1] On February 5, 2002, the trial court disqualified Simon. This appeal followed from that final appealable order.[2]

{¶ 7} In her sole assigned error, Smith argues that the trial court abused its discretion by disqualifying Simon. Because Simon's conduct, which formed the basis for disqualification, did not prejudice the Clinic, we agree.

{¶ 8} A trial court possesses "inherent power to regulate the practice before it and protect the integrity of its proceedings."[3] This power extends to overseeing the ethical conduct of attorneys as well as the dismissal or disqualification of

---

1. {¶ a} In Opinion 90–20, the Supreme Court of Ohio Board of Commissioners on Grievance and Discipline issued an advisory opinion interpreting DR 7–104(A)(1) as follows:

    {¶ b} "When litigation is contemplated or after a lawsuit is filed a lawyer representing an interest adverse to a corporation must notify opposing counsel when seeking to interview management employees, employees who can speak for the corporation and employees whose opinions form the basis of management decisions."

2. Although the trial court's order did not resolve all issues before it, a final appealable order exists pursuant to R.C. 2505.02(B)(2), which states that an order is final if it "affects a substantial right made in a special proceeding or upon a summary application in an action after judgment." See *Ross v. Ross* (1994), 94 Ohio App.3d 123, 640 N.E.2d 265.

3. *Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 33–34, 27 OBR 447, 501 N.E.2d 617.

attorneys who cannot, or will not, comply with the Code of Professional Responsibility when representing a client.[4]

{¶ 9} We will not disturb a trial court's ruling on such matters absent an abuse of discretion.[5] "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias."[6]

{¶ 10} Despite the broad power vested in a trial court to supervise members of the bar practicing before it, disqualification is a drastic measure which a trial court should exercise only when absolutely necessary, such as "in the event of truly egregious misconduct which is likely to infect future proceedings."[7] A violation of a professional ethics rule "does not automatically necessitate disqualification of the attorney involved."[8] Rather, courts are uniform in holding that disqualification is improper where the moving party demonstrated a Disciplinary Rule violation but failed to demonstrate correlative prejudice.[9]

{¶ 11} When determining whether a court properly disqualified an attorney due to a violation of DR 7–104, a reviewing court must consider " '1) the client's interest in being represented by counsel of its own choice; 2) the opposing party's interest in a trial free from prejudice due to disclosures of confidential information; and 3) the public's interest in the scrupulous administration of justice.' "[10]

{¶ 12} Here, the trial court determined that Simon sank below the minimum level of conduct by interviewing several Clinic employees, including Drs. Gold-

---

4. *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 31 OBR 459, 510 N.E.2d 379.

5. *Royal Indemn. Co.*, 27 Ohio St.3d at 33–34, 27 OBR 447, 501 N.E.2d 617.

6. (Citations omitted.) *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256–257, 662 N.E.2d 1.

7. *Musa v. Gillette Communications of Ohio, Inc.* (1994), 94 Ohio App.3d 529, 533, 641 N.E.2d 233; *Maple Heights v. Redi Car Wash* (1998), 51 Ohio App.3d 60, 554 N.E.2d 929; see, also, *Royal Indemn. Co.*

8. *Kitchen v. Aristech* (S.D.Ohio 1991), 769 F.Supp. 254, 258, citing *W.T. Grant Co. v. Haines* (C.A.2, 1976), 531 F.2d 671, 677; *Meat Price Investigators Assn. v. Spencer Foods* (C.A.8, 1978), 572 F.2d 163, 165.

9. *White Family Cos., Inc. v. Dayton Title Agency, Inc.* (S.D.Ohio 2002), 284 B.R. 238, 256, citing *Meat Price Investigators Assn.; Kitchen.*

10. *Kitchen*, 769 F.Supp. at 258, quoting *Meat Price Investigators Assn.*, 572 F.2d at 165.

blum and Sebek, without first notifying the Clinic. On appeal, the Clinic argues that the trial court properly granted summary judgment, based upon Simon's alleged violation of DR 7–104 and the risk of some unnamed prejudice; however, because the record does not demonstrate the likelihood of prejudice, we conclude that the trial court erred.

{¶ 13} The Clinic asserts that the ex parte interviews tainted the proceedings so that a fair trial is improbable because whatever information is gleaned from those interviews is necessarily part of Simon's memory. It may be true that Simon cannot fully dismiss the substance of the interviews; however, obtaining information, per se, does not result in prejudice. Rather, the key inquiry is whether the information will likely prevent the fair administration of justice.

{¶ 14} The Clinic answers this question affirmatively and asserts that the mere risk of a tainted trial warrants Simon's disqualification. In support of this proposition, the Clinic refers us to *Royal Indemn. Co. v. J.C. Penney Co.*[11] and *Maple Hts. v. Redi Car Wash.*[12] We determine that the Clinic has misapplied these cases.

{¶ 15} In *Royal Indemn. Co.*, the Supreme Court stated, "The most common basis for trial court disqualification of an attorney is the risk of a tainted trial due to an actual or potential conflict of interest."[13] While the Supreme Court acknowledged that risk of a tainted trial is grounds for disqualifying an attorney, it did not hold that any degree of risk warrants disqualification. In fact, the holding in *Royal Indemn. Co.* did not turn on the presence of risk; rather, the court merely stated dicta in leading to its conclusion that grounds other than risk may warrant attorney disqualification.

{¶ 16} In *Redi Car Wash,* we cited *Royal Indemn. Co.* and stated, "Under appropriate circumstances, an attorney may be disqualified from continued participation in ongoing litigation in the event of *truly egregious misconduct which is likely to infect future proceedings * * *.*"[14] In its zeal, the Clinic wrongly equates this standard with, as it stated, "*even a risk* of a tainted trial due to the attorney's unethical misconduct."[15] These positions are clearly not analogous.

---

11. (1986), 27 Ohio St.3d 31, 27 OBR 447, 501 N.E.2d 617.

12. (1988), 51 Ohio App.3d 60, 554 N.E.2d 929.

13. *Royal Indemn. Co.*, 27 Ohio St.3d at 34, 27 OBR 447, 501 N.E.2d 617.

14. (Emphasis added). 51 Ohio App.3d at 61, 554 N.E.2d 929.

15. (Emphasis added.)

{¶ 17} Upon reviewing this record, including the deposed testimonies of Drs. Goldblum and Sebek, we find no indication that Simon's conduct will likely prejudice the underlying proceedings. The Clinic goes to great lengths to establish that Simon violated DR 7–104; however, the Clinic fails to demonstrate that Simon caused correlative prejudice justifying her disqualification. Conduct amounting to a Disciplinary Rule violation does not necessarily correspond to circumstances warranting disqualification. We emphasize this point: absent prejudice, a violation of DR 7–104 does not necessitate the extraordinary remedy of disqualification.

{¶ 18} As we find no indication of prejudice, Smith's interest in being represented by the counsel of her choice and the scrupulous administration of justice compel us to reverse Simon's disqualification. Accordingly, Smith's assigned error has merit. We reverse the trial court's disqualification order and remand this matter for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

ANNE L. KILBANE, J., concurs.

TERRENCE O'DONNELL, J., dissents.

TERRENCE O'DONNELL, Judge, dissenting.

{¶ 19} Two questions arise on this appeal which I believe merit review. The first is whether disqualification is an appropriate sanction for violation of DR 7–104 in this case, and the second is, assuming it is an appropriate sanction, what is the appropriate standard of review?

{¶ 20} I recognize that an attorney's violation of a professional ethics rule does not automatically warrant a disqualification of the attorney; however, the paramount consideration in our review of a case of this distinction, I believe, is the inherent power of the court to protect the integrity of its proceedings. *Maple Hts. v. Redi Car Wash* (1988), 51 Ohio App.3d 60, 61, 554 N.E.2d 929, citing *Royal Indemn. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 34, 27 OBR 447, 501 N.E.2d 617. As the court stated in *Royal Indemn.*:

{¶ 21} "Appellants * * * contend that a trial court may only disqualify an attorney from continued participation in ongoing litigation where that attorney's continued participation might unfairly affect the outcome of the litigation. This contention too narrowly restricts the inherent power of the court to protect the integrity of its proceedings. The most common basis for trial court disqualification of an attorney is the risk of a tainted trial due to an actual or potential conflict of interest. *Glueck v. Jonathan Logan, Inc.* (C.A.2, 1981), 653 F.2d 746, at 748. However, this is not the only ground for disqualification. The trial

court's power to protect its pending proceedings includes the authority to dismiss an attorney who cannot, or will not, take part in them with a reasonable degree of propriety. *Laughlin v. Eicher* (D.D.C.1944), 145 F.2d 700. Similarly, attorney disqualification can be warranted in cases of truly egregious misconduct which is likely to infect future proceedings." Id., 27 Ohio St.3d at 34, 27 OBR 447, 501 N.E.2d 617.

{¶ 22} Furthermore, as this court has emphasized, "[a] trial court has wide discretion in the exercise of its duty to supervise members of the bar appearing before it, and the court's ruling will not be disturbed absent a showing that the court abused its discretion." *Redi Car Wash,* 51 Ohio App.3d at 61, 554 N.E.2d 929, citing *Royal Indemn.,* 27 Ohio St.3d at 35, 27 OBR 447, 501 N.E.2d 617.

{¶ 23} Thus, my view here is that unless the court has abused its discretion, i.e., acted arbitrarily, capriciously, or unreasonably, in disqualifying the attorney, our court must affirm the court's ruling. Because the record here does not reflect an abuse of discretion by the court, we should defer to its exercise of power in disqualifying the attorney, in an effort to protect the integrity of its proceedings.

{¶ 24} For these reasons, I respectfully dissent.